# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

C.R.R. *ex rel*. TOMMY & SHEILA RUSSELL                                        PLAINTIFF

VERSUS                                                                N<u>o</u> 3:06-CV-101-SAA

WATER VALLEY SCHOOL DISTRICT                                                   DEFENDANT

## MEMORANDUM OPINION

C.R.R. is a severely disabled, nine-year old child, who is eligible as a special education student under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 to 1487 (2004). She resides in Water Valley, Mississippi with her adoptive parents, Tommy & Sheila Russell.

During the 2005 school year, Sheila Russell became unhappy with the Individual Education Plan (IEP) developed for C.R.R., which provided a two-hour school day and various educational goals. The Water Valley School District initially implemented the IEP in Water Valley, but later determined that schooling C.R.R. at the Scott Center, a unit of the Oxford City School District, was more appropriate. Sheila Russell took issue with this decision, believing C.R.R. should be schooled in her hometown.

When she and Water Valley reached an impasse, Russell requested a due process hearing. After three days of testimony, along with various exhibits, the hearing officer concluded that Water Valley had complied procedurally and substantively with the IDEA. Believing that decision was incorrect, Russell filed this case. Under 20 U.S.C. § 1415(i)(3)(A), this court has

jurisdiction over the dispute.[1] For the following reasons, the court concludes that Water Valley complied with the IDEA and accordingly **DISMISSES** this case.

I.  **FACTUAL BACKGROUND**

C.R.R. has been diagnosed with mixed-seizure disorder, generalized hypotonia, chronic sinusitis, and cerebral palsy. She is non-oral and non-ambulatory. The most recent medical information indicates that C.R.R. functioned on a four-month level cognitively and on a nine-month level linguistically.

The Russells, previously C.R.R.'s foster parents, adopted her in 2005. In March of that year, the Russells contacted Water Valley to schedule an informational meeting, at which they furnished Water Valley basic medical information and discussed C.R.R.'s prior school performance (in Prentiss County, Mississippi); as the child's health condition worsened so did her school attendance. The Russells requested no services from Water Valley at that meeting.

When school in Water Valley began on August 4, 2005, the school bus did not stop at C.R.R.'s house and take her to school. Sheila Russell contacted Water Valley to find out why. She was informed that C.R.R. needed to be formally enrolled by completing various paperwork. Somewhat confused, as she thought C.R.R. was already enrolled, but compliant, Russell got the forms, filled them out, and returned them to Water Valley. From then on, the school bus came regularly.

Water Valley sent the Russells noticed for an IEP meeting. In preparation for the meeting, Lisa Dettor, a special education teacher with Water Valley, drafted an IEP for which she

---

[1] Under 28 U.S.C. § 636(c), the parties consented to the jurisdiction of a United States Magistrate Judge over this case, including entry of final judgment. *See* Order of Reference [10].

borrowed heavily from C.R.R.'s prior IEPs in Prentiss County. The IEP contained rudimentary goals, such as eating without help, playing pat-a-cake and peek-a-boo, and recognizing different styles of music. The draft IEP noted, in typed print, that the IEP might require adjustment of the length of the school day, but nevertheless provided for a full school day.

The IEP team, which included the Russells, met on August 8, 2005. The draft IEP changed little at the meeting, with the most prominent difference being shortening the school day from eight hours to two hours, made by means of handwritten notations throughout the IEP.[2] *See* SD-6, PE-6, PE-7.[3] The IEP did not provide physical, occupational, or speech therapy because the Russells did not request them or any other service. The parties discussed other housekeeping matters such as Water Valley's medicine administration policy and getting a signed release for C.R.R.'s medical records. At the end of the meeting, Sheila Russell and all team members present signed the IEP.

C.R.R. began to miss more and more school days, likely because of her health. Around September 2005, Sheila Russell requested an IEP review/revision meeting. Russell had a number of issues she wished to discuss. By that point, C.R.R. had missed around sixteen days; when she was at school, she appeared extremely fatigued, distant, and unresponsive. In October, the team met and discussed C.R.R.'s attendance, the lack of her medical records despite now having the signed release, and Russell's request for a changing table and an eight-hour school day. The team did not reach a consensus on the school day issue because school personnel did not feel C.R.R.

---

[2] Water Valley maintains the notations were added at the meeting; Sheila Russell maintains that the notations were added after the meeting without her knowledge.

[3] In this case's record, "SD" refers to Water Valley's exhibits, and "PE" refers to the Russells' exhibits, as they were presented in the due process hearing.

could handle the full day. The meeting ended with little resolved and no change to C.R.R.'s IEP.

By the end of November, despite communicating, the parties reach an impasse. Sheila Russell therefore requested a due process hearing. In the request, she complained that C.R.R. was not receiving physical or occupational therapy, food or drink, or a full school day. In the interim, the parties mediated unsuccessfully. Although the issue remained live, the mediation exposed all of Russell's concerns, which Water Valley attempted to address in a new, draft IEP. The district requested an IEP meeting. Two notices later, Water Valley still had not heard from the Russells. Sheila Russell did not respond to the multiple notices because "even though the proposed IEP contained [therapies], day-long schooling, and other provisions requested, she knew that Water Valley . . . was attempting to send C.R.R. to the Scott Center, to which she strenuously objected" (Plaintiff's Brief [19], at pp. 4-5). At this point, the due process hearing became necessary.

The hearing lasted three days. At the pre-hearing conference, the parties laid out the disputed issues for Dr. John Obringer, the hearing officer. The issues were:

- Full, eight-hour, school day;
- IEP with measurable goals;
- The following in-school services:
  - Physical Therapy;
  - Speech/Language Therapy;
  - Occupational Therapy; and,
  - Feeding C.R.R. in the school cafeteria.

The hearing officer concluded in a written opinion that Water Valley had complied procedurally and substantively with the IDEA and that the Scott Center is the "most appropriate setting for

[C.R.R.] (Hearing Officer's Decision, at p. 5).

In August 2006, the Russells filed this case, requesting judicial review and that C.R.R. be schooled in Water Valley, Mississippi. *See* Complaint [1], at p. 5. Later, the Russells requested that the court remand the case so the hearing officer could hear additional evidence on whether transporting C.R.R to the Scott Center negatively affected her. The court granted remand. *See* Order [16]. The Russells did not offer any new evidence on remand as a cooperating witness reneged, and the Russells did not wish to subpoena him. With nothing new, the hearing officer's decision did not change.

To this court, the Russells present the sole issue of whether the hearing officer erred in concluding that Water Valley's offer "to provide C.R.R. with a free appropriate public education (FAPE) through a reasonably calculated program by way of a 'proposed' IEP at the Scott Center . . . did not violate her right to [a least restrictive environment]." (Plaintiff's Brief [19], at p. 6).

## II. DISCUSSION

### A. *Legal Standard*

Despite the case's posture, the standard of review is not the traditional appellate standard. Under the IDEA, this court "shall grant such relief as [it] determines is appropriate" based on the "preponderance of the evidence." 20 U.S.C. § 1415(i)(2)(B)(*iii*). The court may give due weight to the hearing officer's findings, but "must ultimately reach an independent decision . . . ." *Cypress-Fairbanks Independent School District v. Michael F.*, 118 F.3d 245, 247-48 (5th Cir. 1997). "Thus, the district court's review is virtually *de novo*." *Houston Independent School District v. Bobby R.*, 200 F.3d 341, 347 (5th Cir. 2000).

The court's review constitutes two stages: procedural and substantive. First, the court

determines whether the IDEA's procedural safeguards have been properly applied. Second, the court considers whether the substance of the school's educational portfolio for the child complies with the IDEA. *Board of Education v. Rowley*, 458 U.S. 176, 206-07 (1982).

**B.     *Reviewing an IEP's Substance***

In *Cypress-Fairbanks*, the Fifth Circuit identified four factors to examined in determining whether an IEP is reasonably calculated to provide meaningful, educational benefit under the IDEA. They are whether:

(1)     the program is individualized on the basis of the student's assessment and performance;

(2)     the program is administered in the least restrictive environment;

(3)     the services are provided in a coordinated and collaborative manner by the key "stakeholders"; and,

(4)     positive academic and non-academic benefits are demonstrated.

*Cypress-Fairbanks*, 118 F.3d at 253. An IEP "need not be the best possible one, nor one that will maximize the child's educational potential; rather, it need only be an education that is specifically designed to meet the child's unique needs, supported by services that will permit [her] 'to benefit' from the instruction." *Id.* at 247-48.

**C.     *Procedural Issues***

The August 2005 IEP controls this case because the after-mediation IEP was never adopted under the procedures of the IDEA. The August 2005 IEP, on the other hand, procedurally complied with the IDEA; among other things, it contains the parent's signature and was adopted at an IEP meeting. *See* 20 U.S.C. § 1415(d) (describing procedural requirements);

*White v. Ascension Parish School Board*, 343 F.3d 373, 379-81 (5th Cir. 2003) (discussing procedural requirements).

The one potential snag is that Sheila Russell maintains that the handwritten notation changing the school day from eight hours to two hours was made after the meeting, without her knowledge or consent. The preponderance of the evidence does not support her. First, and most telling, Russell produced no copy of the August 2005 IEP *without* the handwritten notation. Russell is unsure whether she took a copy of the IEP with her. See Tr. at pp. 377-79 (Sheila Russell). Others testified that she did. If the notation was entered after the meeting, Russell should presumably have a copy of an IEP without the notation. Second, the meeting minutes indicate Russell agreed to the shortened day. (SD-6, at p. 45). Third, testimony from other team members verifies that the topic was discussed and a consensus reached on shortening the school day. See Tr., at pp. 167-68 (Butch Stevens, Director of Special Education); pp. 190-92 (Lisa Dettor, Teacher); pp. 37-38 (Lisa Potts, Child Advocate). In sum, the court finds that the handwritten notation did not happen after the meeting without Sheila Russell's knowledge or consent. The August 2005 IEP was procedurally valid.[4]

That finding, however, does not clear up all of the confusion. The Russells' brief implies that the hearing officer's decision focused on the after-mediation IEP and therefore is erroneous. As the Russells maintain, it is true that the parents must be on the IEP team and that the IEP must include "educational placement." *See* 20 U.S.C. §§ 1414(d)(1)(B), (d)(1)(A)(*vi*). But, the Russells misapprehend the meaning of "educational placement" in the IDEA. "Educational

---

[4] Water Valley argued that the Russells have waived any procedural argument because they did not present those arguments to the hearing officer. *See* 20 U.S.C. § 1415(f)(3)(B). If the Russells presented this court with a *true* procedural issue, that statute would apply.

placement" refers to an "education program – not the particular institution where that program is implemented." *White v. Ascension Parish School Board*, 343 F.3d 373, 379-80 (5th Cir. 2003). The IDEA does not "explicitly require parental participation in site selection." *Id.* at 379. Practically, then, the decision to place C.R.R. at the Scott Center does not implicate the procedural safeguards embodied in the IDEA. *Cf. Veazey v. Ascension Parish School Board*, 121 F. App'x 552, 553 (5th Cir. 2005) (change in particular school site does not constitute a change in "educational placement" requiring notice to parents); *Adam J. v. Keller Independent School District*, 328 F.3d 804, 811 (once district court concluded that district complied with the IDEA, its discussion of location was *dicta*).

The Russells disagree. They argue that *White*'s command "stands clearly against the weight and analysis of what has become the standard," (Pl.'s Br. [19], at p. 10), but they neither offer reasons why *White* is inapplicable nor suggest what the proper standard is. After review of Fifth Circuit precedent, the court concludes that *White* does have robust precedential value, which this court must recognize and follow.

In the end, what the Russells cast as procedural is really substantive: the Russells believe that Water Valley is not administering the IEP in the least restrictive environment.

### D. *Substantive Issues*

The court's role in this proceeding is purposefully limited: Congress left the choice of education policy and methods to state and local officials. The court's "task is not to second guess state and local policy decisions; rather it is the narrow one of determining whether state and local officials have complied with the Act." *White* 343 F.3d at 377 (quoting *Flour Bluff Independent School District v. Katherine M.*, 91 F.3d 689, 693 (5th Cir. 1996)). So long as Water Valley

complied with the substance of the IDEA, this court is foreclosed from supplanting the district's policy judgments with its own.

In this case, the only disputed *Cypress-Fairbanks* factor is whether the program is administered in the least restrictive environment. This factor should be viewed in light of the IDEA's "preference for 'mainstreaming' handicapped children—educating them with nonhandicapped children." *Board of Education v. Rowley*, 458 U.S. 176, 181 n.4 (1982). Under the IDEA, separate classes or schooling – taking a handicapped student away from the regular school environment – should occur only "when the nature or severity" of the child's disability "is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. § 1412(a)(5)(A). The Russells have the burden to demonstrate that Water Valley has gone beyond flexibility and violated this statutory requirement. *Daniel R.R. v. State Board of Education*, 874 F.2d 1044, 1047 (5th Cir. 1989).

Though giving a strong preference for "mainstreaming," the IDEA contemplates a fluid approach by which school districts can assess each child's capacity for regular classes. "Schools must retain flexibility in educational planning if they truly are to address each child's needs." *Daniel R.R. v. State Board of Education*, 874 F.2d at1044. Nevertheless, under 34 C.F.R. § 300.116, Water Valley must ensure that the placement decision, as defined above, "[i]s as close as possible to the child's home." *Id.* What is mandatory here is the consideration, not the ultimate decision. *See White*, 343 F.3d at 380-81. So long as Water Valley, through the IEP team, deliberates, giving the parents the chance to be heard, it does not violate the IDEA.

Water Valley has an inter-agency agreement with the Oxford City School District which gives Water Valley the benefit of the Scott Center's more sophisticated resources for the

schooling of handicapped children. Water Valley's decision to enter into that agreement as a means of providing resources to seriously handicapped children is consistent with the IDEA.

Fifth Circuit precedent holds as much. In *White*, parents wanted their child schooled at a neighborhood school. 343 F.3d at 375-76. The parish had elected to provide specialized services at a centralized location, where the child's IEP was to be implemented. *Id.* at 380-81. The Fifth Circuit held that that policy decision was "a permissible policy choice under the IDEA." *Id.* at 380. "Schools have *significant authority* to determine the school site for providing IDEA services." *Id.* (emphasis added). And in *Flour Bluff Independent School District v. Katherine M.*, 91 F.3d 689, 694 (5th Cir. 1996), the Fifth Circuit held that a school district's choice to educate a deaf child at a regional school rather than her neighborhood school was consistent with the IDEA. 91 F.3d at 694. As the Fifth Circuit recognized in *White*, "no federal appellate court has recognized a right to a neighborhood school assignment under the IDEA." 343 F.3d at 381.

The Russells contend that Water Valley does not want to deal with C.R.R. and is foisting the child onto Scott Center for that reason. There is simply no evidence to conclude that Water Valley, with a purpose of evading its obligations under the IDEA, sent C.R.R. to the Scott Center. It is true that Water Valley has special education staff capable of implementing C.R.R.'s IEP at some level. But that fact, standing alone, misses the point. Because Water Valley has policy discretion to determine the geographic location for education placement, it may place C.R.R. at the Scott Center even though personnel, though perhaps not as specialized, are available in Water Valley. C.R.R.'s right to a free, appropriate public education does not mean that Water Valley must maximize the child's potential; it must only guarantee "a basic floor of opportunity." *Cypress-Fairbanks*, 118 F.3d at 248. The basic floor of opportunity does not

require the school to make "special accommodations at the parent's request (no matter how well intentioned), particularly where the request is not related to helping the child achieve *academic* potential." *White*, 343 F.3d at 378.

Because the Russells have not demonstrated that C.R.R. will not benefit academically at the Scott Center, this court's analysis ends. It is not permitted to disturb educational policy decision without proof that the policy interferes with C.R.R.'s rights under the IDEA.

Because Water Valley complied with the IDEA, the court **DISMISSES** this case. A final judgment to that effect shall issue concurrently.

**SO ORDERED**, this the 17th day of March 2008.

/S/ *S. Allan Alexander*
UNITED STATES MAGISTRATE JUDGE